UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EDWARD GREAR,

                Plaintiff,                                 Case No. 1:07-cv-203

v.                                                      Honorable Gordon J. Quist

RAYMOND GELABERT et al.,

                Defendants.

_____/

**<u>REPORT AND RECOMMENDATION</u>**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

Plaintiff is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the

Florence Crane Correctional Facility (ACF). In his *pro se* complaint, he sues the following ACF

medical personnel: Dr. Raymond E. Gelabert, Nurse Carol Parker, Health Unit Manager (unknown)

Schoorfear, and Physician's Assistant Margaret Ouellette. Plaintiff claims that Defendants violated

his Eighth Amendment rights by denying him necessary medical care.

On May 15, 2007, Defendants Raymond Gelabert and Margaret Ouellette filed a

motion for summary judgment and supporting brief (dockets #12, 13) on the ground that Plaintiff

failed to exhaust his administrative remedies. On June 7, 2007, Defendants Parker and Schoorfear

filed a separate motion for summary judgment and supporting brief (docket ## 14, 15) on the same

ground. Plaintiff filed a response in opposition to Defendants' motions on June 22, 2007 (docket

#19).

**Applicable Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To sustain this burden, the

nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see*

*Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces

the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street*

*v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). "A mere scintilla of evidence is

insufficient; 'there must be evidence on which the jury could reasonably find for the [non-movant].'"

*Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see*

*also Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

> [A] nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations . . . .  [I]nstead, the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment. [T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . the opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof.

*Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004), *cert. denied*, 543

U.S. 1120 (2005) (citations omitted).

Where, however, a defendant attempts to establish an affirmative defense on

summary judgment, it bears the burden of proving "that there is no genuine issue as to any material

fact and that [it] is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  *Thomas v.*

*Speedway SuperAmerica, LLC*, __ F.3d __, 2007 WL 3145335, at *3 n.2 (6th Cir. Oct. 30, 2007).

## Facts

According to the allegations of the complaint, Plaintiff suffers from a chronic foot

disease involving poor blood circulation that causes complications and deformities of his feet.  He

frequently develops sores and ulcerations, which cause significant pain and make it difficult to stand

and walk.  If left untreated, the conditions pose a risk to Plaintiff of having to undergo amputation of his toes or feet.

Plaintiff was examined by a podiatrist in 2000, while he was housed at a different MDOC facility.  He allegedly was advised that he would continue to suffer pain that could ultimately lead to amputation unless he underwent surgery to place steel pins in his toes.  At that time, he was prescribed a corrective prosthetic brace and special shoes.  Plaintiff never received the shoes, however, apparently because he was transferred to ACF.

When Plaintiff arrived at ACF, Defendant Gelabert allegedly changed his prescriptions, canceling the prosthetic brace and substituting a regular athletic shoe for the specially prescribed shoe.  Plaintiff alleges that Defendants have refused to administer treatment or care for his condition, despite his numerous complaints of ulcerous sores and acute pain and a diminished ability to wear standard shoes and to walk.  He alleges that Defendants have been deliberately indifferent to his acute pain, treating his concerns as minor complaints about corns and callouses. He further alleges that Defendants have refused to refer him to a podiatrist or foot specialist. Plaintiff claims that, by their conduct, Defendants have deprived him of his rights under the Eighth Amendment.

## Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S.

at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  Additionally, a plaintiff must fully exhaust his administrative remedies before filing a complaint.  *See Freeman*, 196 F.3d at 645.  Further,"the PLRA exhaustion requirement requires *proper* exhaustion."  *Woodford v. Ngo*, 126 S. Ct. 2378, 2387 (2006) (emphasis added).  Thus, in order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones v. Bock*, 127 S. Ct. 910, 922 (2007); *Woodford*, 126 S. Ct. at 2386.  "Compliance with the prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust."  *Jones*, 127 S. Ct. at 922.

In interpreting the PLRA, it is appropriate to look to the substantively similar exhaustion rules applicable in habeas cases for guidance.  *Woodford*, 126 S. Ct. at 2384.  In the habeas corpus context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  "To 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies . . ."  *Id.* at 848 (citation omitted; emphasis in original).  In habeas, the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default.  *Woodford*, 126 S. Ct. at 2387.  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal

constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004), *cert. denied*, 544 U.S. 928 (2005); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 2978 (2006); *Spruill v. Gillis*, 372 F.3d 218, 222 (3rd Cir. 2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations.")  Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the Federal Constitution or the intended purposes of § 1997e(a). *See Spruill*, 372 F.3d at 232.

In *Jones  v. Bock*, 127 S. Ct. 910, 921 (2007), the Supreme Court held that "the failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."  Consequently, Defendants have the burden to plead and prove that Plaintiff failed to exhaust his administrative remedies. *Id.* at 919-22.

II.     MDOC Grievance Policy

Michigan Department of Corrections Policy Directive 03.02.130 (eff. Dec. 19, 2003)[1] sets forth the applicable grievance procedures for prisoners in MDOC custody.  Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable

---

[1] The MDOC amended the Grievance Policy on March 5 and July 9, 2007.  However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

issue.  *Id.* at ¶ R.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process, and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ R, X.  The policy provides the following directions for completing grievance forms: "The issues shall be stated briefly.  Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due.  *Id.* at ¶¶ R, DD.  The respondent at Step II is designated by the policy, e.g.*,* the regional health administrator for a medical care grievance.  *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and  staff at all steps of the grievance process.   *Id.* at ¶ U.   "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

With regard to content, the policy requires that the issues be presented briefly. MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ T. The policy further states, "Information provided shall be limited to the facts involving the issue being grieved (i.e. who, what, when where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* In *Jones*, the Supreme Court rejected the requirements imposed by the Sixth Circuit that, in order to properly exhaust, all defendants named in the complaint must have been named in the Step I grievance. 127 S. Ct. at 922-23. However, the *Jones* Court relied upon the version of the policy that took effect on November 1, 2000. In that version of the policy, there was no requirement that particular officials must be named in a Step I grievance. In this case, the version of the policy that became effective on December 19, 2003, governs the grievances filed by Plaintiff. As set forth above, the 2003 version of the policy requires a prisoner to provide the names of all those involved in the issue in the Step I grievance.

III.    Grievances

Plaintiff filed five grievances concerning the claims raised in his complaint. Each of those grievance will be discussed below.

A.    **Grievance No. ACF-2006-04-0278-12I**

Plaintiff filed a Step I grievance on April 1, 2006 concerning the failure of ACF health care staff to follow his ordered special accommodation for size 8½ 5E athletic shoes that fit his leg brace. He alleged that he requires the shoes both to prevent further injury to his feet and to alleviate pain. He further alleged that health care staff were discriminating against him by denying the accommodation. (Mot. of Defs. Gelabert and Ouellette, Exhibit C, docket #12-4.) The

grievance names only "health care staff" as the responsible parties.  Plaintiff appealed the grievance to Step III.

Defendants argue that the grievance was not properly exhausted because it failed to name all of the Defendants as required by MICH. DEP'T OF CORR., Policy Directive  03.02.130, ¶ T. In *Woodford*, the Supreme Court held that the exhaustion requirement was not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy because the grievance process had not been properly exhausted.  127 S. Ct. at 2386.  However, in this case, Plaintiff's grievance was not rejected for failure to name any individual persons.  While Plaintiff apparently failed to follow the grievance policy precisely, prison officials did not rely on the default by  rejecting the grievance for failure to comply.   *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (the doctrine of procedural default is applicable only where the rule is actually relied upon by the state courts); *see also Woodford*, 126 S. Ct. at 2387 (applying the doctrine of procedural default as it governs habeas corpus petitions).   Accordingly, Petitioner properly exhausted his claims based on health care staff's failure to provide the medically necessary athletic shoes.  The claim is exhausted as to all health care staff, which includes all of the Defendants named in the instant case.

B.      **Grievance No. ACF 2006-06-0575-28A**

Plaintiff filed another Step I grievance on June 7, 2006, complaining that the medical order for a leg brace and special shoes issued by Defendant Gelabert was countermanded by Defendant Parker, who ordered a shoe that failed to meet the required specification.  Plaintiff asserted that he attempted to resolve the issue with Defendants Gelabert, Parker and Schoorfear and

with Regional Director of Nursing, Julie Van Setters, but he continued to be denied a shoe that fit his foot and foot brace.   (Mot. of Defs. Gelabert and Ouellette, Exhibit C, docket #12-4.)   Plaintiff pursued the grievance to Step III.

Defendants argue that the claims raised in Plaintiff's grievance were not properly exhausted because the grievance was rejected as duplicative of Grievance No. ACF 2006-04-0278-12I.   The grievance forms reflect, however, that while the grievance was rejected at Step I as duplicative, the Step III response was ambiguous, suggesting that the grievance was rejected on the merits while noting it also was duplicative.  As stated above, prison officials must rely on the default by rejecting the grievance as procedurally defective in order for the claims asserted in the grievance to be procedurally defaulted.  *See Maupin*, 785 F.2d at 138. To determine whether Petitioner has been denied relief based on a procedural default, the court looks to the last "reasoned judgment rejecting the [federal] claim."  *Ylst*, 501 U.S. at 803;  *Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004), *cert. denied*, 544 U.S. 928 (2005).  The doctrine is applicable if "the last state court to review [the prisoner's] conviction 'clearly and expressly' relied on [the prisoner's] procedural default in its decision affirming Petitioner's conviction." *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).  Here, the last reasoned decision at Step III was at best equivocal, invoking the procedural default in an ancillary manner only.  Consequently, Defendants have failed to meet their burden of demonstrating that Plaintiff failed to properly exhaust the claims raised in this grievance.

Moreover, the grievance appears to raise the same issues raised in Grievance No. ACF 2006-04-0278-12I.  As previously concluded, because Defendants did not rely on Plaintiff's failure to name the Defendants in Grievance No. ACF 2006-04-0278-12I, the claims raised in that grievance were properly exhausted as against all Defendants.  Even had the second grievance not

been properly exhausted, that default would not affect Plaintiff's ability to rely on exhaustion of Grievance No. ACF 2006-04-0278-12I.

### C.      **Grievance No. ACF 2006-06-0574-12D**

Plaintiff filed another Step I grievance on June 7, 2006, concerning the failure of health service staff to refer him to a specialist to address the severity of his symptoms.  In his grievance, Plaintiff asks for referral to a specialist as well as to be provided with all necessary and appropriate medical treatment to alleviate his serious medical problem.  Plaintiff specifically names all four Defendants in his grievance. (Pl. Resp. to  Mot. for Summ. J., App. A, docket #19-4.)  The grievance was exhausted through Step III and was decided on the merits of the complaint.

Defendants argue, however, that the grievance was not properly exhausted because he listed the date of the incident as "ongoing."  Defendants contend that providing such a date is inappropriate under the policy, because a prisoner must submit his grievance within five business days of trying to resolve the issue. MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ W. Defendants argue that the grievance clearly was not filed within five business days, as the records indicate that Plaintiff had been trying to resolve the issue since March 2006.

Defendants' argument is without merit.  The grievance was not rejected as untimely by the grievance coordinator.  As previously observed, Defendants must reject the grievance as procedurally defective in order for the claims asserted in the grievance to be considered procedurally defaulted.  *See Maupin*, 785 F.2d at 138.

Defendants next argue that the grievance "may" not have been filed to Step III, despite Plaintiff's attachment of a copy of the grievance requesting review at Step III.  They have attached to their motion a memorandum from Jody Washington, a Litigation Specialist with the

MDOC, together with a copy of a "grievance inquiry" that purports to reflect all of the grievances submitted by Plaintiff to Step III.  Defendants argue that, because the report does not show that a Step III grievance was filed on Grievance No. ACF 2006-06-0574-12D, the Court should conclude that no such grievance was filed.

Defendants bear the burden of pleading and proving Plaintiff's failure to exhaust his administrative remedies.  The results of the grievance inquiry do no more that create a question of fact, in light of Plaintiff's attached documentation indicating that he filed the Step III grievance. As a consequence, Defendants are not entitled to summary judgment on the question of whether Plaintiff exhausted his claims concerning both the referral to a specialist and the delivery of necessary medical treatment as ordered by a specialist.

D.      **Grievance No. ATF 2006-08-0853-12E2**

On August 22, 2006, Plaintiff filed a grievance alleging that health care was not treating the sores on his toe.  The grievance named no individual, addressing "health care" generally. (Compl., App. A, docket #1-2.)

Defendants argue that, because Plaintiff signed off on the grievance, thereby resolving it, it was not taken to Step III and therefore was not exhausted.  Defendants' argument is without merit.  Here, after filing his grievance, Plaintiff was provided treatment as requested in the grievance.  The grievance resolution indicated that "[t]he grievant soaked his foot and used callous remover on his toes. -- Agreed to kite when he needed to repeat this process.  Health care has been provided consistent with PD 03.04.100 Health services." (Compl. App. A, docket #1-2.)  Where a prisoner has received the relief he requested in his grievance, he has no basis for appealing his grievance to another step.  *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130(CC), (GG) ("If

a grievant is *dissatisfied* with the response received at [the previous] Step [] or does not receive a timely response" s/he may appeal to the next step) (emphasis added).  Accordingly, the grievance process must be considered fully exhausted on the matters in issue.

Hence, to the extent Plaintiff claims injuries resulting from the delay in treatment preceding the resolution of his grievance, Plaintiff is exhausted as to all Defendants.

E.        **Grievance No. ACF 2006-10-1022-12E1**

On October 26, 2006, Plaintiff filed a Step I grievance against the nursing staff and Defendant Parker, alleging that they had failed to provide him access to foot soaks and callous removal treatments on an as-needed basis, as agreed to in the resolution of Grievance No. ACF 2006-08-0853-12E2.  (Compl., Att. A, docket #1-2.)  Plaintiff claimed that he had repeatedly kited nursing staff on three occasions between September 23, 2006 and October 23, 2006, in accordance with the grievance resolution of September 15, 2006, in which he agreed with Parker to kite health services when he again needed a foot soak and callous removal.  The attachment to Plaintiff's complaint indicates that Plaintiff completed a form to appeal the grievance through Step III, but it does not contain a Step III response.

Defendants contend that the grievance is not properly exhausted because it states the date of the incident as "ongoing."  Defendants renew their argument that such a designation violates policy under MICH. DEP'T OF CORR., Policy Directive 03.02.150(W).  Defendants' argument once again is without merit.  The grievance was not rejected as untimely by the grievance coordinator. Defendants must reject the grievance as procedurally defective in order for the claims asserted in the grievance to be procedurally defaulted.  *See Maupin*, 785 F.2d at 138.

F.        **Grievance Forms Lacking Identifiers**

Plaintiff also attached to his complaint two grievance forms he apparently completed

at some point, both dated June 7, 2006.  (Compl., Att. A, docket #1-2.)  Neither indicates that it was

received at Step I, nor does it have a grievance identifier assigned to it.  Defendants contend that the

forms were never filed, relying on the lack of any identifier or other indication that staff received

the forms.  They further assert that the affidavit of the litigation specialist indicates that no

grievances other than those previously discussed were filed by Plaintiff during the relevant period.

(*See* Mot. of Defs. Gelabert and Ouellette, Ex. C, docket #12-14.)

The Court observes once again that the grievances listed by the litigation specialist

fail to include at least two grievances that Plaintiff appears to have submitted to Step III.  *See*

Grievance Nos. ACF 2006-10-1022-12E1, ACF 2006-06-0574-12D (discussed *supra*).

Nevertheless, I conclude that Defendants have met their burden of demonstrating that the grievances

lacking identifiers were not submitted through Step III because Plaintiff has failed to claim in any

of his submissions that he actually submitted the grievances.  Accordingly, no genuine issue of fact

exists that the two grievances lacking identifiers were exhausted through Step III.

The claims raised in the apparently unexhausted grievances, however, are raised

separately in grievances I previously have discussed.  Defendants therefore have failed to

demonstrate that any portion of the complaint against any individual Defendant is unexhausted.

IV.        Other Issues

In their motion for summary judgment, Defendants Parker and Schoorfear raise the

previously discussed questions of exhaustion of administrative remedies.  They also argue that they

are not liable under 42 U.S.C. § 1983 because the only conduct Plaintiff alleges against them was

their failure to respond to Plaintiff's grievances and to "override" the decisions of medical professionals. They argue that the allegations are insufficient to support a § 1983 claim.

Defendants' arguments going to the merits of the complaint will be dismissed. In its April 4, 2007 order for service, the Court specifically directed Defendants to file any motion for exhaustion within 30 days after service of the complaint, and ordered in boldface print that "[a]ny motion asserting the exhaustion defense must be limited to that issue only." Defendants' arguments are in direct contravention of the Court's April 4, 2007 order. Accordingly, that portion of their motion will be dismissed without prejudice.

### Recommended Disposition

For the foregoing reasons, I recommend that the Court deny Defendants' present Motions for Summary Judgment (docket ##12, 14.)

Dated:  November 8, 2007                      /s/ Hugh W. Brenneman, Jr
                                              HUGH W. BRENNEMAN, JR.
                                              United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).