UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD GREAR,

        Plaintiff

Case No. 1:07-cv-203

Hon. Robert J. Jonker

v.

RAYMOND GELABERT, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Raymond Gelabert, M.D., and Margaret Ouellette, P.A. (docket no. 34).

        **I.**    **Background**

        Plaintiff is housed at the Florence Crane Correctional Facility ("ACF"). The court previously summarized his claim as follows:

> According to the allegations of the complaint, Plaintiff suffers from a chronic foot disease involving poor blood circulation that causes complications and deformities of his feet. He frequently develops sores and ulcerations, which cause significant pain and make it difficult to stand and walk. If left untreated, the conditions pose a risk to Plaintiff of having to undergo amputation of his toes or feet.
>
> Plaintiff was examined by a podiatrist in 2000, while he was housed at a different MDOC facility. He allegedly was advised that he would continue to suffer pain that could ultimately lead to amputation unless he underwent surgery to place steel pins in his toes. At that time, he was prescribed a corrective prosthetic brace and special shoes. Plaintiff never received the shoes, however, apparently because he was transferred to ACF.
>
> When Plaintiff arrived at ACF, Defendant Gelabert allegedly changed his prescriptions, canceling the prosthetic brace and substituting a regular athletic shoe

> for the specially prescribed shoe. Plaintiff alleges that Defendants have refused to administer treatment or care for his condition, despite his numerous complaints of ulcerous sores and acute pain and a diminished ability to wear standard shoes and to walk. He alleges that Defendants have been deliberately indifferent to his acute pain, treating his concerns as minor complaints about corns and callouses. He further alleges that Defendants have refused to refer him to a podiatrist or foot specialist. Plaintiff claims that, by their conduct, Defendants have deprived him of his rights under the Eighth Amendment.

Report and Recommendation (Nov. 8, 2007). Specifically, plaintiff contends that defendants were deliberately indifferent to his health care requests from August 2006 through January 2007, which complained of "increasing outer sores and acute pain affecting his ability to put on shoes and walk." Compl. at ¶ 8.

## II. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).

"In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, -- U.S. --, 127 S. Ct. 1774, 1776 (2007).

**III.     Discussion**

**A.      Eighth Amendment claim**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under 42 U.S.C. § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith,

that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### B. Plaintiff's medical history

Sometime in the 1970's, plaintiff suffered from a gunshot wound to his left hip. Defendants' Exh. A at 254-55.[1] From this injury, plaintiff developed a permanent foot drop, which is described as "the inability to raise the front part of the foot due to weakness or paralysis of the muscles that lift the foot." Defendants' Exh. B. In 1995, plaintiff was given a special referral to a podiatrist who evaluated him and determined that plaintiff did not need an ankle/foot orthotic device ("AFO") at that time. Exh. A at 258. In 2002, plaintiff was given a specialty referral to a podiatrist who examined plaintiff and recommended an AFO, which plaintiff received. *Id.* at 250, 254-55. The podiatrist also recommended an athletic shoe to accommodate the AFO, but the Regional Medical Officer disapproved the request, suggesting that plaintiff be provided with "a high top deep box toe" to accommodate the AFO. *Id.* at 254-55, 261.

On March 15, 2006, plaintiff was transferred to ACF, where defendants treated him. The medical records reflect that plaintiff did not wear his AFO for the eight months immediately prior to his transfer to ACF, and, as recent as March 13, 2006, he had "no apparent impairment of ambulation or balance." *Id.* at 150-51, 195. When plaintiff was transferred to ACF, he had a Special Accommodation Notice for an AFO and a deep toe prescription shoe. *Id.* at 308. Defendant P.A. Ouellette examined plaintiff on March 27, 2006, and noted that his foot drop was worsening due to plaintiff's failure to wear his AFO for the preceding 10 months. *Id.* at 374. After the examination,

---

[1] The exhibits attached to defendants' brief will be referred to as "Defendants' Exh. __." Defendants' Exh. A consists of voluminous medical records filed under seal. *See* docket. no. 35. The court will discuss these records only to the extent necessary to resolve plaintiff's claim.

5

P.A. Ouellette continued plaintiff's special accommodations for the AFO and prescription shoe. *Id.* at 401.

On August 10, 2006, plaintiff saw a nurse regarding a "sore spot" on the end of his big toe and to get his toenails cut. *Id.* at 34. The nurse instructed plaintiff to kite when he needed his toenails trimmed and advised plaintiff to soak his foot and use a callus remover on his big toe. *Id.* The nurse also gave plaintiff a one-page "Inmate Education" handout entitled "Callus." *Id.* at 34, 291.

P.A. Ouellette saw plaintiff on September 1, 2006, at which time plaintiff stated that he had not been wearing his AFO or new shoes because he had sores on the tips of his great toe and second toe. *Id.* at 71. She scheduled plaintiff for a follow-up appointment on September 15th, and instructed him to bring the AFO and shoes to that appointment for evaluation. *Id.* at 73. On September 15th, plaintiff was "doing fine" with his equipment. *Id.* at 191. P.A. Ouellette noted another appointment "to discuss shoes not big enough for AFO." *Id.* In her progress note for September 15th, P.A. Ouellette noted that although plaintiff had sent a medical kite on August 11th requesting a medical detail for an open-toe shoe, he did not mention this request at his September 1st appointment. *Id.* at 191, 293.

Defendant Dr. Gelabert saw plaintiff on September 19th, at which time he reviewed plaintiff's medical history regarding his foot drop and sore toes. *Id.* at 8. Dr. Gelabert determined that plaintiff should continue with "superficial toe tips skin [paring] after soaking in warm water," and indicated that he would refer plaintiff for physical therapy at Duane Waters Hospital for evaluation and for an "accommodative insole fabrication." *Id.*

On October 11, 2006, plaintiff saw a nurse in response to his complaint of pain in the big left toe and that the skin on the second toe was hard. *Id.* at 5, 33. The nurse soaked plaintiff's feet, trimmed his toenails and noted that he ambulated without difficulty. *Id.* at 33. She instructed plaintiff to keep his skin clean and dry and scheduled an appointment with a medical service provider. *Id.* at 5, 33.

On October 30, 2006, Dr. Gelabert learned that his requested referral for physical therapy was not approved, and that as an alternative, plaintiff should be given "cushion pads" or "wide toe box shoes." *Id.* at 213. The doctor examined plaintiff on November 9th to recheck the foot drop. *Id.* at 182. At that time, plaintiff had corn pads to protect his toes, but still complained of pain. *Id.* Plaintiff had a new pair of tennis shoes, but claimed that the shoes were the wrong size and had kited the quartermaster for a change. *Id.* The doctor encouraged plaintiff to continue using the corn pads and to kite the quartermaster for proper fitting shoes. *Id.* On December 21, 2006, a nurse soaked plaintiff's feet and trimmed his toenails again. *Id.* at 31.[2]

### C. Defendants' motion

#### 1. Serious medical need

Defendants contend that plaintiff's foot condition does not constitute a serious medical need. "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (internal quotation marks omitted). Here, plaintiff did not consider his foot condition to be particularly serious, as evidenced

---

[2] Plaintiff has filed a document entitled "Plaintiff's affidavit in opposition to defendant's motion for summary judgment with brief in support" (docket no. 36). However, this document consists largely of legal arguments and does not contradict any of the medical records submitted by defendants.

by his failure to wear his prescribed AFO for an extended period of time. In this regard, some courts have determined that foot calluses do not rise to the level of a "serious medical need" under the Eighth Amendment. *See, e.g., Kellam v. Hunt*, No. 9:04-cv-1225, 2007 WL 2764814 at *6 (N.D.N.Y. Sept. 20, 2007) (listing district court cases). On two occasions, nurses soaked his feet and trimmed his nails. There is no indication that plaintiff suffered from an infection or other condition that mandated medical treatment, such as antibiotics or surgery. Accordingly, the court concludes that plaintiff's calluses and foot discomfort did not constitute a "serious medical need" for purposes of an Eighth Amendment claim.

### 2. Deliberate indifference

Even if plaintiff's foot condition was construed as presenting a "serious medical need," defendants Dr. Gelabert and P.A. Ouellette were not deliberately indifferent to his need. The records reflect that plaintiff received continuous medical treatment for his foot condition. This is not a case where a prisoner's medical complaints were ignored. In addition, there is no basis to plaintiff's claim that Dr. Gelabert changed his shoe prescription. Furthermore, to the extent that plaintiff disagrees with the diagnosis and treatment of his feet, such disagreement does not rise to the level of a federal constitutional violation. *See Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"); *Smith v. Sator*, 102 Fed.Appx. 907, 909 (6th Cir. 2004) ("differences of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do not state an Eighth Amendment claim") (*citing Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (a

prisoner's disagreement with a course of medical treatment does not state a federal constitutional claim).

## IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 34) be **GRANTED**.

Entered: February 13, 2009            /s/ Hugh W. Brenneman, Jr.
                                       Hugh W. Brenneman, Jr.
                                       U.S. Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within eleven (11) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).