UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD GREAR,

        Plaintiff,

v.

Case No. 1:07-cv-203

Hon. Robert J. Jonker

RAYMOND GELABERT, *et al.*,

        Defendants.

                          /

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983.[1] This matter is now before the court on a motion for summary judgment filed by the two remaining defendants, Carol Parker and Mary Ann Schorfhaar (docket no. 40). The motion is unopposed.

**I.    Background**

At all times relevant to his complaint, plaintiff was housed at the Florence Crane Correctional Facility ("ACF"). The court previously summarized his claim as follows:

> According to the allegations of the complaint, Plaintiff suffers from a chronic foot disease involving poor blood circulation that causes complications and deformities of his feet. He frequently develops sores and ulcerations, which cause significant pain and make it difficult to stand and walk. If left untreated, the conditions pose a risk to Plaintiff of having to undergo amputation of his toes or feet.
>
> Plaintiff was examined by a podiatrist in 2000, while he was housed at a different MDOC facility. He allegedly was advised that he would continue to suffer pain that could ultimately lead to amputation unless he underwent surgery to place steel pins in his toes. At that time, he was prescribed a corrective prosthetic brace

---

[1] Plaintiff has been paroled and now resides in Flint, Michigan. *See* docket nos. 60 and 61.

>and special shoes. Plaintiff never received the shoes, however, apparently because he was transferred to ACF.
>
>When Plaintiff arrived at ACF, Defendant Gelabert allegedly changed his prescriptions, canceling the prosthetic brace and substituting a regular athletic shoe for the specially prescribed shoe. Plaintiff alleges that Defendants have refused to administer treatment or care for his condition, despite his numerous complaints of ulcerous sores and acute pain and a diminished ability to wear standard shoes and to walk. He alleges that Defendants have been deliberately indifferent to his acute pain, treating his concerns as minor complaints about corns and callouses. He further alleges that Defendants have refused to refer him to a podiatrist or foot specialist. Plaintiff claims that, by their conduct, Defendants have deprived him of his rights under the Eighth Amendment.

Report and Recommendation (Nov. 8, 2007) (docket no. 23). Specifically, plaintiff contends that defendants were deliberately indifferent to his health care requests from August 2006 through January 2007, in which plaintiff complained of "increasing outer sores and acute pain affecting his ability to put on shoes and walk." Compl. at ¶ 8.

## II.     Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v.*

*Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d  at 478-79 (citations omitted).

"In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The motion is unopposed.  "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996).  However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact.  *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### III.     Discussion

It is well established that an inmate has a cause of action under 42 U.S.C. § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition.     *Id.* at 8-9. "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). In addition, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in

4

good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause."

*Whitley v. Albers*, 475 U.S. 312, 319 (1986).

The court previously summarized plaintiff's medical history as follows:

Sometime in the 1970's, plaintiff suffered from a gunshot wound to his left hip. From this injury, plaintiff developed a permanent foot drop, which is described as "the inability to raise the front part of the foot due to weakness or paralysis of the muscles that lift the foot." In 1995, plaintiff was given a special referral to a podiatrist who evaluated him and determined that plaintiff did not need an ankle/foot orthotic device ("AFO") at that time. In 2002, plaintiff was given a specialty referral to a podiatrist who examined plaintiff and recommended an AFO, which plaintiff received. The podiatrist also recommended an athletic shoe to accommodate the AFO, but the Regional Medical Officer disapproved the request, suggesting that plaintiff be provided with "a high top deep box toe" to accommodate the AFO.

On March 15, 2006, plaintiff was transferred to ACF, where defendants treated him. The medical records reflect that plaintiff did not wear his AFO for the eight months immediately prior to his transfer to ACF, and, as recent as March 13, 2006, he had "no apparent impairment of ambulation or balance." When plaintiff was transferred to ACF, he had a Special Accommodation Notice for an AFO and a deep toe prescription shoe. Defendant P.A. Ouellette examined plaintiff on March 27, 2006, and noted that his foot drop was worsening due to plaintiff's failure to wear his AFO for the preceding 10 months. After the examination, P.A. Ouellette continued plaintiff's special accommodations for the AFO and prescription shoe.

On August 10, 2006, plaintiff saw a nurse regarding a "sore spot" on the end of his big toe and to get his toenails cut. The nurse instructed plaintiff to kite when he needed his toenails trimmed and advised plaintiff to soak his foot and use a callus remover on his big toe. The nurse also gave plaintiff a one-page "Inmate Education" handout entitled "Callus."

P.A. Ouellette saw plaintiff on September 1, 2006, at which time plaintiff stated that he had not been wearing his AFO or new shoes because he had sores on the tips of his great toe and second toe. She scheduled plaintiff for a follow-up appointment on September 15th, and instructed him to bring the AFO and shoes to that appointment for evaluation. On September 15th, plaintiff was "doing fine" with his equipment. P.A. Ouellette noted another appointment "to discuss shoes not big enough for AFO." In her progress note for September 15th, P.A. Ouellette noted that although plaintiff had sent a medical kite on August 11th requesting a medical detail for an open-toe shoe, he did not mention this request at his September 1st appointment.

> Defendant Dr. Gelabert saw plaintiff on September 19th, at which time he reviewed plaintiff's medical history regarding his foot drop and sore toes. Dr. Gelabert determined that plaintiff should continue with "superficial toe tips skin [paring] after soaking in warm water," and indicated that he would refer plaintiff for physical therapy at Duane Waters Hospital for evaluation and for an "accommodative insole fabrication."
>
> On October 11, 2006, plaintiff saw a nurse in response to his complaint of pain in the big left toe and that the skin on the second toe was hard. The nurse soaked plaintiff's feet, trimmed his toenails and noted that he ambulated without difficulty. She instructed plaintiff to keep his skin clean and dry and scheduled an appointment with a medical service provider.
>
> On October 30, 2006, Dr. Gelabert learned that his requested referral for physical therapy was not approved, and that as an alternative, plaintiff should be given "cushion pads" or "wide toe box shoes." The doctor examined plaintiff on November 9th to recheck the foot drop. At that time, plaintiff had corn pads to protect his toes, but still complained of pain. Plaintiff had a new pair of tennis shoes, but claimed that the shoes were the wrong size and had kited the quartermaster for a change. The doctor encouraged plaintiff to continue using the corn pads and to kite the quartermaster for proper fitting shoes. On December 21, 2006, a nurse soaked plaintiff's feet and trimmed his toenails again.

Report and Recommendation (Feb. 13, 2009) (internal citations and footnotes omitted) (docket no. 50).

Defendants Parker and Schorfhaar contend that plaintiff cannot maintain a § 1983 action against them, because neither of them had any personal involvement with plaintiff. The court agrees. Defendant Parker's sole involvement was to respond to two Step I grievances based upon a review of plaintiff's records, i.e., grievance ACF 2006-10-1022-12e1 (grievance "1022") and ACF 2006-04-278-12i1 (grievance "278"). Parker Aff., docket no. 41-6. Similarly, defendant Schorfhaar's only involvement with plaintiff was as the Step I grievance reviewer of grievance nos. 1022 and 278. Schorfhaar Aff., docket no. 41-9. "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See, e.g., Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing

that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care").[2]

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 40) be **GRANTED** and this action dismissed.


Dated:  June 22, 2009  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[2] Moreover, plaintiff has not established the elements of an Eighth Amendment claim.  The court dismissed plaintiff's treaters, Raymond Gelabert, M.D., and Margaret Ouellette, P.A., in part because plaintiff's calluses and foot discomfort did not constitute a "serious medical need" for purposes of an Eighth Amendment claim.  *See* docket nos. 50 and 55.